UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                              )
UNITED STATES                 )
                              )
     v.                       )     CRIMINAL NO. 04 10288 RWZ
                              )
JONATHAN MITCHELL             )
_____)

**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the Defendant, Jonathan Mitchell, and respectfully submits this Sentencing Memorandum to provide information to the Court to be used in imposing a sentence "sufficient but not greater than necessary" to achieve the purposes of punishment required by Title 18 of the United States Code, specifically §3553, in light of the decision set forth in *United States v. Booker*, 543 U.S. 220 (2005).

**I.     Introduction**

The function of the sentencing Judge in a criminal case was laid down by the Supreme Court in *United States v. Koon*, 518 U.S. 81 (1996), in which the Court stated that it has been historically proper for a "sentencing judge to consider every convicted person as an individual in every case" with mitigating and aggravating factors. *See Koon*, 518 U.S. at 113. The Supreme Court once again stated emphatically in 2005 that the Judge must consider the aggravating and mitigating factors of every case as paramount factors in the sentencing of the individual, when it struck down the United States Federal Sentencing Guidelines' mandatory provision as Unconstitutional. *See Booker supra. Booker* once

again requires that judges cast aside the Sentencing Guidelines when the interests of justice would not be served by imposing the sentence required under the guidelines, and restores the independence of the District Court judges. Furthermore, 18 U.S.C. §3553(a) specifically instructs that a Judge shall not impose a sentence that is greater than necessary to achieve the stated purposes of the statute. The purposes of the statute are: 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In addition, *Booker* laid out five coequal factors to be considered by a judge in fashioning a sentence, which are: 1) the guidelines sentencing range; 2) the nature and circumstances of the offense and the history and characteristics of the defendant; 3) the kinds of sentences available; 4) the need to avoid unwarranted sentencing disparity; and 5) the need to provide restitution.

*Booker* made it clear, however, that the Sentencing Guidelines are advisory, and while they provide substantial weight, they are not to control the sentence when there are clearly identified factors or reasons for the Court to fashion an appropriate sentence outside of the Guidelines. *United States v. Jiminez-Beltre*, 440 F.3d 514, 516 (1st Cir. *En banc* 2006). *Booker* "makes it possible for courts to impose non-guidelines sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." *Id.* at 518. In the present case it is reasonable for the Court to impose a sentence below the advisory Guideline sentencing range.

In sentencing Mitchell, the Court must proceed according to the three-step sequence endorsed by the First Cicruit in *Jiminez-Beltre* at 518-519:  1) It must first determine the applicable Guideline sentencing range; 2) It must then consider and either accept or reject any proposed departures from that range; and 3) It must determine "whether other factors identified by either side warrant an ultimate sentence above or below the guideline range."

## II.    The Guideline Sentencing Range

### A.  Base Offense Level

The greatest quantity of OxyContin the Court could find Jonathan Mitchell responsible for is 198 80mg pills.  In the entire 10 month operation in which numerous buys occurred, Jonathan Mitchell appeared at only two sales, and his name was mentioned at only one other.  There was absolutely no mention of Jonathan Mitchell in any of the dealings prior to November 25, 2003 either directly or tangentially.  On the November 25, 2003 deal Jonathan Mitchell accompanied Baldassano to the North Shore Mall, and acted as a lookout during the drug deal.  There was no indication in the reports that he had any idea as to the amount of money or drugs involved in the deal, nor was there any indication that he had any significant role in the drug deal other than acting as a lookout.  Mitchell did not handle or exchange any drugs in this deal, nor did he handle or exchange any money.  Mitchell's only other involvement was in the December 12, 2003 drug deal.

Mitchell's involvement in the drug conspiracy was limited to these two transactions and he did not participate in the drug ring any further after the December 12,

2003 date. In fact, when asked if Mitchell was the delivery boy involved in the January 6, 2004 transaction Behsman indicated to the undercover agents that Baldassano and Behsman would not use Mitchell anymore. Probation concurs that 198 80 mg pills is the maximum amount attributable to Mitchell in the Probation Department's Pre-sentence Report. Additionally, the Defendant, agrees with the Probation Department's assessment of the base offense level of 27 in this case.

### B. Adjustment for Role in the Offense

The Defendant does, however, disagree with the Probation Department's assessment, and the Government's assertion, that he is not a candidate for Minimal Participant status. Pursuant to U.S.S.G. § 3B1.2 the Defendant qualifies for and is entitled to a 4 point reduction in his base offense level for his role in the offense. The Defendant was implicated in two controlled purchases in a ten month operation. In the first controlled buy, the Defendant did not handle the drugs or the money but simply acted as a lookout for the other individuals involved. In the second transaction, the Defendant transported the drugs to the buy site, threw them on the table, was given the money, left and delivered the money straight to Espinola and Baldassano. Baldassano and Espinola were, by all accounts, the leaders or organizers of the operation.

On January 6, 2004, the Under Cover Agents asked why Baldassano did not deal directly with them, and Behsman stated "Baldy" does not like to "carry [the OxyContin]" on his person, and therefore directs other people to deal for him. The Defendant Mitchell's conduct in this case was consistent with a person who is merely transporting the drugs and is consistent with a low level participant in this trade. The commentary to U.S.S.G. § 3B1.2 Application Notes: 3. Applicability of Adjustment: A. Substantially

Less Culpable than Average Participant: is directly on point with this circumstance in which a person who is charged with drug trafficking in a conspiracy and is only being held responsible for the weight he actually transported or stored is not precluded from receiving this adjustment, especially when his role is a small role such as transporting the drugs. The Defendant Mitchell showed no knowledge of the scope or structure of the conspiracy involved here, but simply delivered the drugs to the place he was told to deliver them and then delivered the money back to the place he was told to deliver it.

Mitchell's low level of involvement is further buttressed by the fact that he is only mentioned in two transactions which occur within approximately a two week window. In fact, Special Agent Story reported in his Affidavit, that on January 6, 2004 he was told by Behsman that Defendant Mitchell had "screwed the guys out of $2,200" and would not be used anymore. By the January 6, 2004 date, Mitchell was no longer a part of this enterprise and is not seen again by the law enforcement authorities. The position that Mitchell was a minimal participant is further reinforced by the witness who testified before the Grand Jury and stated he knew most of the members of the conspiracy and that they would do anything Baldassano wanted in order to have access to Baldassano's OxyContin.

His low level role in the offense is also supported by the underlying genesis of his becoming involved in the OxyContin transactions, namely his own personal addiction to OxyContin. Mitchell was severely addicted to OxyContins and accepted payment of a pill or two in return for his role in the delivery. While the addiction is not a defense, it clearly argues in favor of the position that Mitchell was not acting in a supervisory role or

in anyway other than as a minimal participant looking to be given a pill or two to feed his habit.

### C.  Adjustment for Acceptance of Responsibility

It is appropriate in the instant case for a 3 point reduction in offense level as the Defendant pled guilty in a timely fashion, allowing the Court to allocate its resources efficiently.  Additionally the Government has indicated in the past that the Government would file a motion for the third point of this reduction in exchange for the Defendant's plea of guilty.

### D.  Total Offense Level

If the Court allows the downward adjustments outlined above, the Defendant's Total Offense Level prior to the Court's decision on the "Safety Valve" is a 20.

### E.  Applicability of the Safety Valve

Mitchell meets the criteria for the safety valve provision as he has met each of the five criteria.

1. Mitchell has 0 criminal history points.
2. Mitchell did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense.
3. The offense did not result in the death or serious bodily injury to any person.
4. Mitchell was not an organizer, leader, manager or supervisor of others in the offense and was not engaged in a continuing criminal enterprise as defined in 21 U.S.C. § 848.
5. Mitchell was such a low level participant in the organizational structure of this crime that he did not have any additional useful information to provide to

police that was not already present in the police reports. The police knew the intimate details of each of the controlled buys in which Jonathan Mitchell was involved, either through extensive surveillance, or through their contact with the other participants in the drug transactions. Therefore Mitchell had no useful information or evidence to provide to the Government. In addition, the short period of time that Mitchell was involved in the drug enterprise prevented him from gaining intimate knowledge of the inner workings of the conspiracy and prevented him from acquiring any useful knowledge or evidence to deliver to the Government. According to U.S.S.G. § 5C1.2(a)(5), the fact that a defendant has no useful or relevant information to provide to the Government shall not preclude him from shall not preclude a finding by the Court that the defendant has complied with this section.

Therefore, Mitchell has met all five criteria and is entitled to a 2 point downward reduction in the sentencing guidelines range for a Total Offense Level of 18.

### F. Guideline Provisions without Departures

Based upon a Total Offense Level of 18 and a Criminal History Category of I the guideline imprisonment range is 27-33 months.

### III. Departures

Jonathan Mitchell is entitled to a downward departure due to pre-sentence exceptional efforts toward recovery from his drug addiction. Mitchell was severely addicted to OxyContin and Heroin at the time he was involved in the current criminal transaction. In fact, he became involved in this criminal enterprise to feed his personal drug habit, as he accepted a pill or two of OxyContin as payment for his role in the

enterprise. His addictions were so severe, that he was unable to control himself, even after he was required to provide random urines to probation while awaiting trial on this case. Finally in July of 2005 he was required by this Court to go into a drug treatment program. Since entering the program he has remained in the King Street sober house until recently when he went into a new sober house.

Since the time Mitchell has entered the sober houses he has made extraordinary efforts towards recovery from his drug addiction, and has shown himself to be a model citizen and a strong addition to the sober house at which he is staying. Furthermore, according to Darryl Gray, the house manager, "Jonathan's motivation for a new way of life is inspiring to each member of King Street." This type of pre-sentence recovery efforts are exactly the type of consideration the Sentencing Board contemplated in § 5K1.2(a)(2)(B). Although exceptional recovery post-sentencing is listed as a factor that should not be considered as grounds for departure, the policy reasons behind the Federal Sentencing Guidelines would make pre-sentencing exceptional recovery from addiction a strong factor that should be weighed heavily in the consideration for a downward departure. Since last July, Mitchell has entered and completed an inpatient program, aftercare program, moved into a sober house, passed every drug test given him, become a leader in the sober house and its community, obtained a Union carpentry position and most importantly maintained his sobriety for over a year. The Pre Trial Services supervision confirms the level of success that he has attained (see attached letter from Judith Oxford of Pretrial Services).

### IV. Other Factors Under 18 U.S.C. §3553

18 U.S.C. §3553 requires that a court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The sentencing judge is statutorily prohibited from imposing a sentence on a criminal defendant that is greater than necessary according to the statute, even when a greater sentence is indicated by the sentencing guidelines. *United States v. Denardi*, 892 F.2d 269, 276-277 (3d Cir. 1989). Therefore, the Court must consider the following in sentencing Mitchell.

In the present case, the relevance of the pre-sentence efforts as to recovery is compelling. It was the addiction that was the underlying cause of the descent into the criminal behavior. It is undisputed that OxyContin is one of the most addictive substances. Mitchell's addiction was a severe one and his intense and successful efforts to deal with this addiction, is a factor that the Court should consider as an indicator of post incarceration non recidivism and the need for a lesser sentence. The level of his addiction, the extent of his battle with the addiction and the level of his success with the addiction are factors warranting a downward departure.

Additionally, the sentences already imposed upon other similarly situated defendants suggest that the Court should depart downward in the sentencing of Mitchell. In the present case, the organizers of this drug ring, manipulated addicts to do the criminal dirty work by offering to give them small amounts of the very drug the runners were addicted to as payment. The fact that one runner delivered a higher amount of drugs than another one is merely happenstance. The runners were not interested nor involved in setting the amount delivered, the amount paid or the profit gained. The

runners delivered a package in exchange for drugs.  The similar actions of delivering a package, regardless of the contents, should be punished in this case with similar sentences.  The unique factors of this case would warrant a downward departure for Mr. Mitchell.

**V.**     **Conclusion**

Jonathan Mitchell had a limited role in the present drug trafficking enterprise in both time and scope.  Furthermore, he has made extraordinary efforts at recovery since July of 2005 and has been sober for over a year.  He has become a leader and role model in the sober house community in which he lives and has obtained a Union carpentry position.  Because of his exceptional efforts at recovery and creating an environment that keeps him away from any temptation to re-offend, it would be appropriate for the Court to order 18 months jail time and order extensive probation requirements.

Respectfully submitted,
Jonathan Mitchell
By his attorney,

July 31, 2006                    /s/ William F. Sullivan
                                 _____
                                 William F. Sullivan
                                 Sullivan & Sweeney, LLP
                                 277 Newport Avenue
                                 Quincy, MA 02170
                                 (6170 328-6900
                                 BBO# 488290

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing motion has been served the above date electronically upon Assistant U.S. Attorney David G. Tobin.

/s/ William F. Sullivan
_____